SCOTTISH UNION & NATIONAL INS. CO. *v.* WYLIE.

[70 South. 835.]

1. INSURANCE. *Fire policies. Conditions. Defenses. Waiver. Payment of premiums.*

Where the duly authorized agent of a fire insurance company informed the owner of the property afterwards burned, that his policy had expired and was told to issue a policy for a given amount on the property and the agent replied that he could consider the insurance in effect from that minute, and the policy was later written but not delivered until after the fire at which time the premium was paid, and at the time the policy was written there was a chattel mortgage on the property and there was also another insurance policy on the property but no questions were asked or answered in regard to the same. In such case the agent waived the benefits of the noninsurance and the nonmortgage clauses existing in said policy at that time; or rather he had no right to insert these two clauses in said policy, because they were not a part of the contract of insurance entered into between

himself and the owner, that contract being simply that he was to issue a policy on the property for the named amount, regardless of any mortgage or any other insurance.

2. SAME.

In such case where loss occurred the owner could recover on the policy though the property was mortgaged and there was other insurance on the same.

3. INSURANCE DEFENSE. *Waiver. Payment of premiums.*

In such case, when the policy was not delivered nor the premium paid until after the fire and at the time of the payment of the premium the agent knew that there was a mortgage on the property and that the same was covered by other insurance, he waived the benefit of the noninsurance and nonmortgage clauses in the policy by the acceptance and retention of such premium.

APPEAL from the circuit court of Harrison county.

HON. J. I. BALLENGER, Judge.

Suit by N. F. Wylie against the Scottish Union & National Ins. Co. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin & Armistead,* for appellant.

*Griffith & Wallace,* for appellee.

SYKES, J., delivered the opinion of the court.

Suit was instituted in the circuit court of Harrison county by the appellee, Wylie, against the appellant insurance company upon a policy of insurance for the amount of seven hundred and fifty dollars, insurance on personal property used in the livery and undertaking business, and consisting of a hearse, carriages, wagons, etc. Under the instruction of the court the jury returned a verdict in favor of plaintiff and assessed his damages at seven hundred and nine dollars and eight cents. The facts in the case, briefly stated, are as follows:

On or about December 16, 1913, the appellee was informed by one Mr. Tomlinson, the agent of appellant com-

pany at Gulfport, Miss., that a policy which appellant held on the above-described property had expired. Appellee then told Mr. Tomlinson to issue a policy on the same property for seven hundred and fifty dollars, to which Tomlinson replied that he could consider the insurance in effect from that minute. The policy was later written by the said agent, but was kept in his office until after the fire, which occurred December 24th, and in which fire the appellee sustained a total loss of all property covered by this insurance, except two surreys and two sets of harness. The premium of thirty-seven dollars and fifty cents on the policy was not paid by the appellee until after the fire, or some time during the month of January. At the time the policy was written there was a chattel mortgage on the personal property, and there was also another insurance policy on the property for the sum of seven hundred and fifty dollars. At the time the premium on the policy was paid to the insurance agent, the testimony further shows that he had knowledge of both the other insurance and the chattel mortgage on said property. The premium was retained by the agent, and was not offered to be returned until the trial of said cause, or until the pleadings were filed.

It is the contention of appellant that a fraud was practiced upon the insurance company by the appellee in the procuring of this insurance, and for that reason the policy was void and a nullity, and that no subsequent waiver by the agent of the company could breathe life into a policy which was void from its inception. In support of this contention, appellant relies principally upon the case of *Insurance Co.* v. *Antram,* 86 Miss. 224, 38 So. 626. The facts in the instant case do not justify the contention of appellant. There were no false or fraudulent representations whatever made by the appellee to the agent of appellant at the time he instructed him to write this insurance. The facts show that the appellee was notified by the agent of appellant that his insurance had expired,

whereupon he told this agent to write him a policy for seven hundred and fifty dollars. No blank application for this insurance was given to the appellee to be made out. This being true, it follows that the agent of appellant, in making this contract, acted upon what information he already had as to the condition of the property and as to the condition of other insurance and mortgages upon the same. The testimony in the case shows that Tomlinson, as the agent of the appellant company, had the right to issue policies, collect the premiums therefor, cancel policies, and, in short, was their agent for all purposes connected with the insurance business in the city of Gulfport. The appellant company held him out as their agent, and they are bound by all his acts within the real and apparent scope of his authority. This being true, by his not asking for any information from the insured as to the condition of the policy or the condition of the property, he waived the benefits of the noninsurance and the nonmortgage clauses existing in said policy at that time; or rather he had no right to insert these two clauses in said policy, because they were not a part of the contract of insurance entered into between himself and the appellee—that contract simply being that he was to issue a policy on this property for seven hundred and fifty dollars regardless of any mortgages or any other insurance. The Antram Case, relied upon by appellant, simply decides this:

"If the assured made false statements to the agent of appellant, and thereby secured the issuance of a policy which, had the truth been stated, would not have been issued, the contract of assurance was never entered into, being absolutely vitiated by the fraud."

In the instant case, however, no false or fraudulent representations—in fact, no representations whatever— were made by the insured. In the case of *Rosenstock, Ex'r* v. *Insurance Co.*, 82 Miss. 674, 35 So. 309, the policy recited that the insurance would be void if the interest of the assured had not been truly stated to the company, or if it was not truly stated in the policy, or if the assured

was not the sole and unconditional owner of the property described. The policy in that case had been delivered to and·accepted by the insured. The facts developed that there had been a contract of sale of the property entered into, and a·part of the consideration of same had been paid, of which the insurance company was ignorant. The court in that case held that the plaintiffs, by their silence and acceptance of the policy, agreed to the above terms; and for that reason the policy was void. In the case at bar, however, the policy was not delivered to the insured until·after the fire; and he was not chargeable in any way with the terms contained in said policy. The case of *Insurance·Co.* v. *O'Dom,* 100 Miss. 220, 56 So. 379, Ann. Cas. 1914A, 583, simply decides that under the facts in that case the cashier of a local office of the insurance company was a special agent of the company, who had no authority to waive any of the ·conditions printed in said policy. In the case at bar we are dealing with a general agent of an insurance company; and for this reason the *O'Dom Case* is not in point. In the case of *Rivara* v. *Insurance Co.,* 62 Miss., on page 728, this court said:

"An insurance agent, clothed with authority to make contracts of insurance or to issue policies, stands in the stead of the·company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."

To the same effect is *Insurance Company* v. *Sheffy,* 71 Miss. 919, 16 So. 307; also *Insurance Company* v. *Gibson,* 72 Miss. 58, 17 So. 13.

The case at bar is very similar to that of *Insurance Company* v. *Holmes,* 75 Miss. 390, 23 So. 183. In the *Holmes Case* the insured sent to the company's agent, who issued the policy, requesting him to send a blank form for application for insurance, and also to send a man to inspect the house on which the insurance was de-

sired. The agent did neither, but wrote the policy him-self, just as was done in the instant case. He misde-scribed the house, and destroyed that policy, and wrote a second one, which he sent to the appellee, who never read it, and who was in ignorance of the non.mortgage clause in the same until his attention was called to it, after the fire and after the premium had been paid and accepted. The court in part in that case says (75 Miss. on page 402, 23 So. on page 184):

"This is a case, then, in which no application—no formal application—was made, because the agent held it unnecessary, inasmuch as he knew about the condition of the property, and a case in which appellee did not know there was any anti-mortgage clause contained in the policy until after the loss, and the question is whether the company shall now be permitted to repudiate its contract made, not upon any misrepresentations, or even representations, of the insured, but upon its own knowledge of the condition of the property. If this policy was issued upon the knowledge of the company as to the condition of the property, and after refusal to furnish the usual blank application, whereby the insured would have apprised the insurer of the true condition of the property, and not upon any representation of the insured, then the anti-mortgage clause must be held to have been waived. Any other view would involve the holding by us of this proposition: That the insurance company, waiving any application by the person desiring insurance and issuing a policy upon its own knowledge of the condition of the property, may receive the premiums paid for the indemnity, and defeat a recovery for a loss sustained by inserting in the policy a provision invalidating the contract from the moment it was signed and delivered, thus inducing the insured to rest upon a contract which the company never intended to carry out. This cannot be sound law."

The case at bar is a much stronger case against the insurance company than that above quoted, for the rea-

son that in this case there was never delivered or attempted to be delivered to the insured the policy of insurance. By the acceptance of the premium by the agent of the insurance company after the fire, when he had knowledge both of the mortgage on said property and of the other additional insurance upon the same, he waived all irregularities which might or could have existed, either in the issuance or during the continuation of said policy. In the case of *Insurance Company* v. *Smith,* 79 Miss. on page 144, 30 So. on page 363, this court said:

"A week after the fire, with full knowledge by the insurance company, through its special agent and adjuster, Mr. Alexander, of the existence of the mortgage, it received, through its local agent, Mr. Russell, the premium on the policy and held it. This fact carries the whole case shown by the record for the assignee of the insured, because it was a waiver of its defenses."

The case of *Insurance Company* v. *Dobbins,* 81 Miss. 623, 33 So. 504, goes even further than the *Smith Case* in holding the insurance company estopped to set up a forfeiture of the insurance. In the *Dobbins Case:*

"The agent was paid the premium some time in the forenoon of October 25th, without knowledge at that time of the additional insurance; but six hours thereafter, on the same day, when there had been no change whatever in the condition of the parties, he was fully informed of the additional insurance. . . . After full knowledge on the 25th of the other insurance, the agent had another conversation with Dobbins, in which he told him that the policy had been forfeited on account of the additional insurance, but that he would report the matter to the company; and more than that, when Dobbins came to him to get blank proofs to make proofs of loss, he furnished them."

On page 630 of 81 Miss., on page 506 of 33 So. the court says:

"Accepting, therefore, the correctness of the finding of fact by the learned circuit judge, to wit, that the agent did not know, at the very instant he received the premium, that there was other insurance, it follows, from the very acts and conduct of the agent, acting in those respects for the company, that the appellant is estopped to set up the forfeiture."

We therefore conclude: (1) That it was the duty of the agent of the insurance company, in the absence of any request by him for information from the insured, to have informed himself as to the true condition of the property insured; that his acts in this respect are binding upon his principal, the insurance company; that, failing to do this, the insurance company had no right to insert in this policy the anti-mortgage clause and the anti-insurance clause, and that neither of said clauses forms a part of the contract of insurance; and (2) that by the acceptance of the premium by its agent after the fire, and after the agent had knowledge of the mortgage and of the additional insurance, then this was a waiver on the part of the insurance company of these two clauses in the contract.

*Affirmed.*