MORRISTOWN FURNITURE CO. *v.* PEOPLE'S NAT. FIRE INS. CO.

*(Nashville.* December Term, 1923.)

1. **ESTOPPEL.** Reliance on adverse party and acting otherwise than party would otherwise, and resulting injury, essential to equitable estoppel.

As a basis for equitable estoppel, the party invoking the estoppel must, in reliance on the act of the other party on which the estoppel is predicated, have acted otherwise than he would but for such act, with the result that he be injured by his own action if the estoppel be not sustained. (*Post, p.* 216.)

2. **INSURANCE.** Company not estoppel by receipt of premium after fire from insisting on previous cancellation of policy.

Where by mutual agreement of the parties a fire policy was canceled before any fire because of extra hazard of the risk, the receipt after the fire by the local agent from insured of the premium, which had merely been charged when the policy was delivered, and the company's retention of it, when forwarded, till after suit brought by insured, the company having ascertained that insured was contending that it had not consented to the cancellation, and it being entitled to make a full and thorough investigation of such claim, did not estop it to insist on the previous cancellation. (*Post, pp.* 216-234.)

Cases cited and approved: Hodson v. Guardian L. Ins. Co., 97 Mass. 144; Scottish Union & N. Ins. Co. v. Wylie, 110 Miss.; 681; Elliott v. Lycoming, etc., Ins. Co., 66 Pa. 22; Rundell v. Anchor Fire Ins. Co., 101 N. W, 517; Phoenix Ins. Co. v. Grove, 25 L. R. A. (N. S.), 3; Johnson v. Ins. Co., 119 Tenn., 617; People v. Dimick, 107 N. Y., 13; Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa, 563; Clark v. Ins. Co. of North America, 89 Me., 26; Stebbens v. Lancashire Ins. Co., 60 N. H., 65; Mead v. Phoenix Ins. Co., 158 Mass., 124; Kerr v. Ins. Co., 117 Fed., 442; Gauntlett

Morristown Furn. Co. v. People's Nat. Fire Ins. Co.

v. Sea Ins. Co., 127 Mich., 504; Bentley v. Columbia Ins. Co., 17
N. Y., 421.

Cases cited and distinguished: Ins. Co. v. Fallow, 110 Tenn., 734;
Phoenix Ins. Co. v. Tomlinson, 125 Ind., 84; Taylor v. Fire Ins.
Co., 140 Tenn., 152; Hopkins v. Phoenix Fire Ins. Co., 200 Ky.,
365.

## FROM HAMBLEN.

Appeal from the Chancery Court of Hamblen County.—
HON. M. H. GAMBLE, Chancellor.

RUFUS M. HICKEY, for complainant.

E. R. TAYLOR and FRANTZ, MCCONNELL & SEYMOUR,
for defendant.

MR. L. D. SMITH, Special Justice, delivered the opinion
of the Court.

This case was disposed of at a former day of the term,
the decree of the chancellor in favor of the complainant
being reversed and the complainant's bill dismissed.

An earnest petition to rehear has been filed. So far as
the petition is not a reargument of the case it is based
upon a misconception of the court's views, which were
stated in an oral opinion.

The action is one to recover on a fire insurance policy
for the loss of certain furniture and materials located in
the complainant's plant at Morristown, which were totally
destroyed by fire on November 18, 1920.

One of the defenses made by the insurance company was that the policy had never been delivered; that is, that the delivery of the policy was only conditional in that it was not to be placed if the company did not care to go on the risk after being advised by the local agent of the extra hazards thereof. This defense was held by the court not to be well taken, although the circumstances of the delivery were such as to reflect upon another defense now to be referred to.

The insurance company contended that the policy was by mutual agreement and consent canceled and surrendered before the fire. This defense was held to be good under the facts. While the petition to rehear challenges the correctness of the court's conclusions in this respect, it is not really based upon that ground. It could not well be so placed, since it presents nothing whatever new to entitle the complainant to have the court review its conclusions on that point, the court being entirely satisfied therewith.

The real ground pressed upon the court for a rehearing is the contention made by the complainant that the defendant is estopped from insisting upon the cancellation of the policy because some twenty days after the fire the local agent of the company, who had delivered the policy, accepted from the insured the payment of the premium, which when the policy was delivered, had been merely charged by the local agent on his books against the insured, and it was not returned to the insured until after suit was brought some months later.

A brief review of this question will show the reasons for the holding that the facts do not work an estoppel,

and why the argument now made in the petition fails to convince us of error therein.

It is fundamental in the doctrine of equitable estoppel that before one can be denied his rights not only must his conduct be inconsistent therewith, but the party invoking it must have been injured thereby. Here we have a case in which at the time of the loss there existed no contractual relations between the parties; the property originally insured had been destroyed, there was no obligation upon the insurance company to pay for the loss, and this condition continued for twenty days after the property was destroyed before anything was done by the company, which it is now contended operated as an estoppel. The action of the local agent in accepting payment of the premium at the time he did could not possibly have induced the complainant to do anything, nor did he do anything after that time, to have placed himself in a better situation than he was in when the fire occurred. If the conduct of the complainant now relied upon had taken place before the fire, and by reason thereof it had been unable to procure other insurance, the reasons of the contention would obtain. But, the rights of the parties being fixed, nothing less than conduct tantamount to a new contract could avail the complainant.

The doctrine of estoppel as applicable to a situation such as is pressed here is aptly stated in 10 R. C. L., p. 697.

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been

induced to alter his position in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party. Its whole office is to protect him from a loss, which, but for the estoppel, he could not escape. Consequently the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed."

It is urged by the complainant that its case must be ruled by that of *Insurance Co.* v. *Fallow,* 110 Tenn., 734, 77 S. W., 940, and that the case establishes the error of our conclusions. The opinion in that case particularly relied upon is as follows:

"It has also been held that, even though an agent of the company had no authority to bind it by receiving payment of a premium after it was due, yet the company might receive payment at any time, and, if they received the amount of the premium from the agent after it was due, they were bound to inform themselves of the time when it had been paid to him, and by receiving it from him without inquiry they waived the right to insist on the delay in the payment as a ground of forfeiture of the policy. *Hodson* v. *Guardian L. Ins. Co.,* 97 Mass., 144, 93 Am. Dec., 73."

The correctness of the proposition quoted cannot be questioned, especially as applied to the facts of that case. The policy which was involved in that case, an accident policy, provided:

"There shall be no insurance unless the premium is actually paid."

The last premium had not been paid when the injury occurred; it was due on the 18th, and the injury occurred on the 23d. There was a custom and practice between the insured and the company for the agent to call for the premium. The insured relied upon this custom implicitly and always reserved the premiums until called for. It was held that forfeiture was waived under the well-settled rule of law that forfeiture cannot be insisted upon for nonpayment of premiums when due, when by the course of dealings between the parties the assured has been led to believe that it will not be invoked. This is upon the plainest principles of estoppel. The company sought to avoid the application of this doctrine, because it was shown that there was no custom for the agent to collect the past-due premiums after any loss had occurred. Upon this contention the court said:

"But, under the facts stated, we do not think this is a material consideration. The agreement and the course of business under which the assured and the company, through its general agent were acting, were made and entered upon before the assured fell in arrears. He was authorized to rely upon them, and did rely upon them. But for this agreement, and settled course of business thereunder, he would no doubt have paid his premium when due, and would not have fallen in arrears at all. To allow the company to repudiate the action of its agent in collecting the premium under these circumstances, and to escape the payment of the loss, would be to sanction a fraud. We think the facts stated make out an estoppel upon the company."

The effect of this holding is that the policy was in full force and had not been forfeited when the liability occurred, and to permit the company to escape in the face of the custom prevailing would be a fraud, since but for the custom the insured would have paid his premium when due— a precaution he was induced by the company's agent to omit.

Another case pressed upon the court as being contrary to the court's conclusions is that of *Phoenix Insurance Co.* v. *Tomlinson,* 125 Ind., 84, 25 N. E., 126, 9 L. R. A., 317, 21 Am. St. Rep., 203, a case cited by this court in the Fallow Case. The policy sued on there contained the provision:

"In case the assured fails to pay the premium note or order at the time specified, then this policy shall cease to be in force and remain null and void during the time said note or order remains unpaid after its maturity, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy. The payment of the premium, however, revives the policy and makes it good for the balance of its term."

When the premium note became due the assured did not pay it, but after maturity and before loss the insurance company sued on the note and obtained judgment which was stayed. Upon the expiration of the stay and after loss an execution was procured and issued, and that was paid by the insured. The company contended that it was not precluded, by having accepted payment of the judgment rendered in its favor for the premium, from insisting that the policy was forfeited and not in force during the time the premium was actually unpaid. On the other

side, it was claimed that the conduct of the insurance company operated as a waiver of the right to declare forfeiture. The court, in accord with the well-established rule that forfeitures are not favored, held that the acceptance of the payment of the judgment based on the premium, even after loss, waived the forfeiture. Under the contract of insurance the policy could be at any time put in full force, and the obligation to pay the loss was restored by the payment of the premium. The court in that case distinguished such a case from the rule applicable where there was no policy at all, or one that had become lifeless. The acceptance of the premium was but an affirmance of its validity, and that it was in force from the time it issued. The court said:

"In such a case there is no interregnum in which there was a lifeless policy, for the policy is continuous in its nature and effect, and the premium covers the risk as an entirety."

If the policy had been canceled and was without life, so that in order to be binding it would have to be revived as in the instant case, quite a different rule would apply, as is clearly recognized by the court in that case. This apparent from the following language of the court:

"We cannot perceive any valid ground upon which it can be held that an insurance company may accept payment of the entire premium after a loss has occurred, and yet escape payment of the loss. By accepting payment it affirmed the validity of the policy and tacitly asserted that the policy was in force from the time it was executed. In such a case there is no *interregnum* in which there was a lifeless policy, for the policy is continuous in its nature

and effect, and the premium covers the risk as an entirety. It would do violence to the intention of the parties and the language of their contract to declare, as the appellants seek to have us do, that the payment simply revived the policy. It cannot be justly affirmed that the parties meant to revive a policy in a case where, as here, the act which revived it was performed after the loss occurred. The reasonable effect to be attributed to such an act is that the parties meant that the affirmance of the contract should relate back to the execution of the policy.

"In our judgment, acceptance of the premium after the loss has occurred is a waiver of the right to declare a forfeiture of the policy, and not a mere act of revivor. It is not reasonable to assume that the parties meant to do no more than revive the policy and give it force from the time of the acceptance of payment, since, as the loss had already occurred, the insured could acquire no benefit from the revived policy. The only rule which would yield him benefit and give him a consideration for his money is that which we adopt.

"It is a principle of wide sweep that forfeitures are not favored, and within the spirit of this principle such cases as this clearly fall. To treat the acceptance of the premium as merely reviving the contract is in effect to adjudge a forfeiture, for, in the event that we should adopt the views of the appellant, the result would be the same as to adjudge the policy forfeited. This is clear when it is brought to mind that if the policy is held to be lifeless from the time of default in payment until after the loss it must also be held that the insured cannot recover anything upon his contract. A construction of the conduct of the parties

which will practically produce the same result as a declaration of forfeiture is one which it is the duty of the courts to avoid if it can reasonably be done. It is clear that this construction may be reasonably avoided; it is, indeed, quite clear that such a construction as that for which the appellant contends would be against reason and justice."

The case just referred to is in line with our case of Fallow, supra, the principle of which is that, the policy itself being in force, and subject merely to forfeiture for nonpayment of premium, the company will not be allowed to declare forfeiture if it accepts the premium. The cases are not to be likened to the case at bar, since here the policy did not stand merely in a situation to be forfeited, but, to be put in force, had to be revived or renewed. In the cases referred to there still existed a contractual relationship between the parties, whereas in the case at bar this relationship had ended entirely. We are not dealing with a case in which the loss occurred after reception of the payment with a knowledge of breach of insurance contract affording grounds for forfeiture; it is not a case falling within the rule stated in 19 Cyc., p. 796, to the effect:

"Inasmuch as the acceptance of a premium with full knowledge of a right and intention to assert a forfeiture of a policy for a prior or existing breach of condition would be a fraud upon the insured, the principle is well settled that, if the insurer, being cognizant of a right to declare a forfeiture, demands or accepts a premium not already earned and due to it prior to breach, it has elected to treat the policy as valid and subsisting, and the forfeiture is waived."

See *Taylor* v. *Fire Ins. Co.,* 140 Tenn., 152, 203 S. W., 830.

In such cases the receipt of payment is wholly inconsistent with a forfeiture, and evidences a waiver of the right to declare a forfeiture, the reason stated by the court in the Taylor Case being:

"If the policy is subject to be voided, the insured has a right to know how the insuring company will treat it, so that he may protect himself by way of insurance in some other company on the same property in case forfeiture is declared. When the insurer, with knowledge of the breach, demands such payment, that carries assurance to the insured that the policy is in force. When loss follows, the insurer will therefore be deemed to have waived its right to declare a forfeiture."

Even a demand for the payment of the premium after loss will not operate to waive a forfeiture, neither will the acceptance of the payment of the premium where there is no possibility that the assured can be misled to his harm, or placed in a position less advantageous than it previously had, and for a greater reason as the policy itself had been canceled and surrendered and no contractual relations existed between the parties.

In the Taylor Case, after the property had been destroyed by fire, the insurer wrote the plaintiff that his note for the premium was past due; later on, the insurer wrote another letter asking the insured to make remittance of the premium, saying that on failure the company would be compelled to put the plaintiff's note out for collection. In an action on the policy the insurance company sought to avoid liability upon the ground that contrary to a provision of the policy the plaintiff had procured additional

insurance in another company without its consent. The
plaintiff contended that the conduct of the insurance com-
pany above stated waived its right to insist upon a for-
feiture. The same reasons were urged in that case as are
now pressed upon the court in this case. The court of
civil appeals had held the principle which we quoted from
19 Cyc. to be applicable. The view of that court was
overruled by this court in the language following:

"If payment had been received by the company, it might
be but fair to hold that the fact worked a waiver of the
benefit of the clause stipulating against other insurance.
The insured would then be made to bear a burden which
might give some substantial support to a waiver. 19 Cyc.,
798; *Scottish Union & N. Ins. Co.* v. *Wylie,* 110 Miss., 681,
70 South., 835.

"But where a mere demand is made, it would be inequi-
table for the insured, who ignored it, to claim a waiver
when the subject-matter of insurance, the dwelling house,
no longer existed. The demand in 'this case was evidently
inadvertent; in fact it related to a premium installment
that could not keep effective a policy on a nonexisting
dwelling. Plaintiff had not the remotest idea of paying
the premium; nor could the company assume that he
would. He was in no way embarrassed, burdened, or in-
jured by the demand for payment; and he is not entitled
to recover on the policy, as the circuit judge held. *Elliott*
v. *Lycoming, etc., Ins. Co.,* 66 Pa., 22, 5 Am. Rep., 323;
*Rundall* v. *Anchor Fire Ins. Co.* (Iowa), 101 N. W., 517;
and note to *Phœnix Ins. Co.* v. *Grove,* 25 L. R. A. (N. S.),
3, where the annotator thus formulates what we conceive
to be the true rule:

149 Tenn.—15.

226        TENNESSEE REPORTS.  ·  [149 Tenn.

Morristown Furn. Co. v. People's Nat. Fire Ins. Co.  .

"'It is manifest that the situation of the parties is different, where the insurer acquires knowledge after loss of a breach of the policy occurring before loss, than it is where notice reaches him before loss. Aside from the requirements in respect to proofs of loss, the contract has fulfilled its purpose when the event which it provides against has happened. The rights of the parties are then fixed. There is no possibility that the insured can be misled to his harm by silence or nonaction of the company as to any breach of the policy which occurred before loss. The company, of course, may pay if it wishes, but if it fails to let the insured know what it intends to do, the latter cannot be injured, for, after loss, it is too late for him to get other insurance. Therefore it would seem to be the logical result of this situation, not only that mere silence or nonaction on the part of the company will not affect its rights, but that any direct act in the nature of waiver . . . must have put the insurer to some disadvantage, or caused him some expense, before it can be made liable."

The same thing was decided by this court in *Johnson* v. *Insurance Co.,* 119 Tenn., 617, 107 S. W., 688, in which the distinction between the case at bar and the contention made by the complainant is clearly pointed out, and with good reason. There is an essential difference between waiver of a right to declare forfeiture and estoppel to deny the existence of any such rights; the former does not render the contract void, whereas in the other case no contract whatever existed between the parties. In the *Johnson Case,* supra, a fire insurance policy had been suspended when the fire occurred. Special notice had been given

to the insured prior to the fire that the policy had been suspended and the payment of the premium was necessary to reinstate the policy:

"It is insisted for the defendant that in view of the notices above copied, one, issued before maturity of the installment, warning the insured that in case of a failure to pay at maturity, the insurance would be suspended, and so remain during the delinquency, and the other, issued after the installment had become due, notifying him that by reason of nonpayment the insurance was then suspended, and that he would have no protection so long as the premium remained due and unpaid, he could not have been misled by indulgence into believing that the policy would not be suspended by failure to pay and would not remain in suspension so long as that failure should continue.

"This seems to us the correct view of the matter. Opposed to this is the only the single circumstance that, when installments had been paid after maturity during the two previous years, no formal receipt was issued from the office at Chicago containing a notice that the insurance was by such payment reinstated. The only interpretation of this fact that seems to us reasonable is that the company and the insured mutually elected to treat the payment itself as a reinstatement of the policy."

In the Johnson Case the insured paid the premium which was in default after the fire had occurred, and, when this circumstance was ascertained, the fact not being known to the clerk to whom it was paid, the money was returned, so it was held that there was no obligation upon the part of the company to accept the premium, and, since it became suspended and was in that condition when the

fire occurred, "the payment thereafter, under the circumstances stated, did not revive the policy." Evidently, the court had in mind the fact that the policy was not merely subject to forfeiture, but that it had been actually suspended, when it said:

"There is a wide distinction between the present case and *Life Insurance Co.* v. *Fallow*," and "of course, . . . there could be no reinstatement by payment after the subject-matter of the policy, the property, had been destroyed by fire, since there could be nothing upon which the policy could operate."

It seems perfectly plain that the ruling in the Fallow Case has no application to the case where the parties had agreed upon the cancellation of the policy and it stood without life just as if it had never been issued when the property had been destroyed, such as the instant case undoubtedly is, and must be governed by the general principle of estoppel to which we have referred and applied as indicated in the Johnson Case.

The view expressed is confirmed by the decision of the court of Appeals of Kentucky in the case of *Hopkins* v. *Phœnix Fire Insurance Co.*, 200 Ky., 365, 254 S. W., 1041. The question presented and decided in that case will appear from extract which we quote from the opinion, to-wit:

"But it is contended that the writing of the policy by the agent's stenographer, whom it is alleged had knowledge of the fire, on Monday, the next day, and the mailing of it to plaintiffs was an acceptance of the risk and obligated defendant to pay the insurance. Answering that contention it may be first said that it is extremely doubtful, in the absence of facts showing otherwise, if the ste-

nographer (who at best was only a subagent appointed by Eastham, the agent), could bind the defendant in any such transaction; but, waiving that question and assuming for the purposes of this opinion only that the stenographer's authority was equal to that of Eastham, the agent, and determining the question on the theory that the latter himself prepared and mailed the policy after knowledge of the fire, we are then convinced that defendant is not liable, upon the ground that its agent had no authority to bind his principal by attempting to insure property already destroyed. The very nature of an insurance contract is to indemnify the insurer against risk, and when there is no longer any risk, and the fact is known to both parties, the very purpose of the contract is destroyed, and it might be that such a contract would be against public policy. But, whether so or not, it seems to be a well-settled legal principle that an insurance agent, though he have authority to sign and deliver policies, cannot bind his principal in an attempt to assume a risk which has already became nonexistent. Joyce on Insurance, vol. 1, section 106; *People* v. *Dimick*, 107 N. Y., 13, 14 N. E., 178; *Waterloo Lumber Co.* v. *Des Moines Ins. Co.*, 158 Iowa, 563, 138 N. W., 504, 51 L. R. A. (N. S.), 539, on page 544; *Clark* v. *Insurance Co. of North America*, 89 Me., 26, 35 Atl. 1008, 35 L. R. A. (Me.), 276; *Stebbens* v. *Lancashire Ins. Co.*, 60 N. H., 65; *Mead* v. *Phœnix Ins. Co.*, 158 Mass., 124, 32 N. E., 945; *Kerr* v. *Ins. Co.*, 117 Fed. 442, 54 C. C. A., 616; Clement's Fire Insurance, vol. 1, p. 455; *Gauntlett* v. *Sea Ins. Co.*, 127 Mich., 504, 86 N. W., 1047; *Bentley* v. *Columbia Ins. Co.*, 17 N. Y., 421; and 19 Cyc., 592, in which latter citation the general rule is thus broadly stated:

" 'An agent has no authority to bind his company for insurance of property which to his knowledge has already been destroyed.'

"The reasoning underlying that rule is not only sound, but it is in perfect harmony with the universally accepted doctrine of the law of agency, to the effect that the principal is not bound by the unauthorized and fraudulent acts of his agent, which are participated in by the other party to the contract. In this case the policy itself had to be accepted before becoming obligatory, which, under the admitted facts, was not done till after the fire.

"Neither may the transaction by the stenographer on Monday be treated as a ratification of what occurred on Sunday before, for the obvious reason that the ratification by the agent after knowledge of the fire is as much forbidden as his right to originally insure the property after such knowledge. In some of the cases last cited, and others that might be, the question of the agent's right to ratify a prior imperfect transaction after knowledge of the fire was involved, and his right to make the ratification was measured by the same limitations of his authority to make the contract in the original instance with the same knowledge."

There is nothing in the circumstances in the case at bar which could possibly operate to make a new contract, or to reinstate an old policy which had been canceled. It is quite true that the acceptance of the premium by the local agent of the Insurance Company after the fire was not done under the same circumstances as appeared in the Johnson Case, but it does not follow that different circumstances would bring the case within the principle of the

Fallow Case. Confessedly, the circumstances must have been of such character as to afford some consideration for the reinstatement of the policy or in some way to have brought about a prejudice to the complainant either of his rights or in the assertion thereof which he otherwise would have had.

The policy had been issued by the local agent on November 11, 1920. Notice by the agent to the company of the issuance of the policy conveyed the information that a policy on this same property, issued by another company, had been ordered canceled by that company after the inspection of the property by one of its agents, and making the request: "If you do not care to go on the risk, advise me immediately and policy will not be placed." The extra hazards of the risk, as well as the fact that a former policy had been canceled after inspection, was well known to the insured's agent. Upon receipt by the local agent of the company of notice to cancel the policy immediately, which notice was sent by telegram and confirmed by letter, the local agent immediately negotiated with the agent of the complainant for the cancellation of the policy. The cancellation of the policy immediately resulted, and it stood without any force or effect whatever; the question of the payment or nonpayment of the premium did not enter into consideration at all; the agreement to cancel it was not based upon the nonpayment of the premium, because, so far as the company itself and the complainant were concerned, the premium had been paid and the policy was in full force and not subject to forfeiture for nonpayment of premium; it was canceled because both parties recognized the extra hazards of the

risk, and its cancellation was consented to and complainant afforded time and opportunity to secure other insurance, which he did. The insurance company had charged the local agent with the premium; it carried itself no charge against the insured; the local agent had assumed responsibility for the payment of the premium and was looking to the insured to pay him. The company had no further dealings with the complainant with respect to the collection of the premium. It might well assume that the local agent would either return the premium to the insured, or, if credit had been extended, cancel the charge. At any rate, matters stood in that situation until December 11, 1920, when the complainant, after advising with his attorney, paid the amount of the premium to the local agent. This was some twenty-five days after the policy had been canceled, a fact which the complainant well knew, and twenty days after the fire. Although the proof is not deemed sufficient to establish an understanding or collusive agreement between the complainant and the local agent to revive the policy by bringing about a state of facts that would estop the company, it is quite manifest that the complainant was making a studied effort to accomplish this result, and the company's local agent was evidently perfectly willing that that result might be brought about. Although the local agent collected the premium from the complainant on December 11th, he did not remit the amount thereof to the company until some days later. The company did receive this remittance from the agent, and it did not return the same to the agent, nor did the agent return it to the complainant until this suit had been brought. It appears that the insurance company has an

accounting department separate from its agency department. The accounting department handled the accounts of the agents, the agents being charged with premiums on policies reported, but had no dealings directly with the holders of policies, looking alone to the agents for the payment of the premiums collected by him, as much so when the agent did not collect cash as when he did.

While we do not hold that the company is not bound by knowledge which either of the departments might have, these circumstances may be looked to in ascertaining the good faith of the company, whether there was any element of fraud upon their part, or whether any of their conduct may be considered as in any way influencing the complainant's rights. While the local agent, of course, knew of the fire when he received the payment from the complainant, the company did not know the arrangement between the local agent and the complainant with respect to the premium or the circumstances under which the premium had been paid to the local agent; the accounting department merely knew that the local agent had remitted for this particular premium, and that was some ten or twelve days after the agent had been charged with the premium. Of course, the company having received the premium, and the local agent not having returned it, it would be liable to replace the premium, which it did finally do. But the company is not to be charged even with the delay which occurred in this case, for the reason that when the company received the remittance from the agent, or soon thereafter, it ascertained the fact that the complainant was making a contention that it had not agreed to a cancellation of the policy. Although, as we found, the com-

Morristown Furn. Co. v. People's Nat. Ins. Co.

plaintant had consented to the cancellation of the policy, the company was entitled to make a full and thorough investigation of the complainant's claim in this regard. The complainant cannot be heard to say that the insurance company was not entitled to investigate and to decide upon its investigation what it would do merely because the company knew the policy had been canceled, while the complainant himself was earnestly insisting at this time that the policy had not been canceled and that the company was liable therefor. In view of this position of the complainant, the insurance company cannot be estopped merely because it did not immediately return the premium. The company had the right, if the circumstances proved to be doubtful, or even though they may have themselves taken a different view of it, to treat the policy as being in force, and pay the loss. Furthermore, it does not appear that the company was advised that the premium had been paid to the local agent after the fire, but that is of itself not material. These facts do not operate to bring the case within the principle of estoppel. The case must be governed by the principles and upon the authorities to which we have referred in the course of this opinion, with the result that the petition to rehear must be denied.