CAMDEN FIRE INSURANCE ASSOCIATION OF CAMDEN, NEW
JERSEY, v. MELOY.

Opinion delivered May 16, 1927.

1. INSURANCE—RECORD OF SALES OF RICE.—Under a fire policy requiring insured to keep an inventory of the kind and quantity of rice on hand and a record of transactions if same has been graded, priced, bought, or sold by the assured, *held* that a daily record of the rice put into assured's granary was sufficient where none of the rice had been graded, priced, bought, sold or removed from the granary before the fire.

2. INSURANCE—NECESSITY OF INVENTORY.—A fire policy requiring an inventory showing the quantity and kind of rice insured, and the record of the transactions, if graded, bought or sold, has no application where the assured is merely storing his rice in his own granary and neither buying nor selling same.

3. INSURANCE—IRON-SAFE CLAUSE—WAIVER.—In a suit upon a fire policy, demand and acceptance of a premium after a fire and after the adjuster had knowledge of an alleged breach of a provision in the policy requiring assured to keep an inventory, *held* a waiver of such defense.

4. APPEAL AND ERROR—REFUSAL TO ADJOURN—HARMLESS ERROR.—Where one of defendant's attorneys was called away by his father's illness, and defendant was ably represented by another attorney, overruling a motion to adjourn the case from 6:30 p. m. until the following morning, and ordering an adjournment at 7:45 p.m., was within the discretion of the trial court, and such action will not be disturbed on appeal, without a showing of abuse or prejudice.

5. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—Where the record failed to show that insurer objected or excepted to the judgment of the trial court fixing the amount of the attorney's fee on recovery by insured, the Supreme Court cannot reduce the amount allowed.

Appeal from Arkansas Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

*Mike Danaher* and *Palmer Danaher* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*John W. Moncrief,* for appellee.

McHANEY, J.   Appellees brought two separate suits in the Arkansas Circuit Court, Southern District, one against appellant, Camden Fire Insurance Association

of Camden, New Jersey, and the other against the Mississippi Fire Insurance Company of Jackson, Mississippi, to recover on separate policies issued by appellants, insuring the appellees against loss by fire in the sum of $6,493.50 each, on rough rice while located in the granary of the appellee, Meloy, in the Southern District of Arkansas County. The cases were consolidated and tried together, resulting in a judgment for the amount sued for against each company, in the sum of $6,437.50, or a total of $12,875, with interest from March 10, 1925, at 6 per cent. and the statutory penalty, and was based upon proof satisfactory to the jury that there were 10,300 bushels of rice in the granary, of the value of $1.25 per bushel. After the verdict and judgment were rendered, the question of the attorney's fees to be fixed by the court was postponed to an adjourned day, at which time the testimony of several witnesses on behalf of the attorney for the plaintiffs was taken, and the court, after hearing such testimony, fixed the attorney's fees at $2,000, for which judgment was accordingly rendered. There was no objection or exception on the part of counsel for appellants to the action of the court in so doing. Thereafter, in due time, a motion for a new trial in each case was filed, overruled, and an appeal was prayed and granted to this court, where they have been submitted and briefed together on one transcript.

Appellants first urge as a ground for reversal that appellees were not entitled to recover because they failed to comply with what is known in one of the policies as the "iron-safe" clause, and in the other as the "record warranty" clause. These clauses are almost identical, and, in substance, provide that the assured shall, at the beginning of each season, make a complete itemized inventory, showing the quantity and kind of rice on hand, "and if same has been graded, priced, bought or sold, will preserve an exact record of such grade of rice;" that he shall keep a set of books and a record showing the quantity and kind of rice on the premises, and

removed from the premises, and "if any of the rice * * * is graded, bought or sold by the assured, shall produce accurate records of the grades, quantities and prices involved in such transaction; that the assured shall keep such inventory, books, records, accounts, including record of grades and prices * * * securely locked in a fire-proof safe at night, and at all times when such books or records are not actually in use, and/or failing in this, shall keep same in some place not exposed to fire which would destroy aforesaid premises." And further provides, if this is not done, the policy shall be null and void.

R. A. Scott, a witness for appellees, testified that he kept a daily record of the number of bushels of rice threshed and put in the granary, but appellants insist that this is not sufficient, because he did not claim to have kept any record of the grades. A sufficient answer to this is that the policies do not require that a record of the grades be kept unless the "same has been graded, priced, bought or sold." The rice in the granary had not been graded, neither had any rice been bought and none sold, except 650 bushels delivered to the Rice Growers' Association prior to the 18th day of February, the date of the issuance of these policies. The same amount of rice in the granary at the time of the issuance of the policies was still there at the date of the fire. There had been no change in any respect, and a sufficient record of the amount of rice put in the granary was kept by the appellees. It is manifest from a casual reading of these clauses that they can have no application in the case of a farmer or other person who was not buying or selling rice as a dealer or warehouseman whose stock is subject to change from day to day by the increase of the amount bought, or the decrease thereof by the amount sold. In the case of *Queen of Arkansas Insurance Co.* v. *Dillard,* 96 Ark. 378, 131 S. W. 946, where the property insured in the policy was "$400 on office furniture, fixtures and supplies, including desks, tables, chairs, stands, type, type

cases, presses and electrical fixtures as are necessary to his use, and such other furniture and fixtures,'' this court, in disposing of the contention of the insurance company that the insured violated the "iron-safe" clause by keeping no books and making no attempt to comply therewith, said:

"The requirements of the iron-safe clause have reference to such articles of merchandise as constitute the stock in trade of the insured, and has no application to property in a policy like that under consideration."

Again the court said:

"The object in requiring a set of books to be kept showing a record of the business transacted and of the changes taking place from day to day in the stock of goods of the insured, is that the insurer may have the means of ascertaining the amount and value of the goods destroyed. *Southern Ins. Co.* v. *Parker*, 61 Ark. 207 [32 S. W. 507]. In cases like this, where no stock of goods or other wares are kept on hand, it is apparent that the requirement of the iron-safe clause can serve no useful purpose, and the maxim that 'the law does not compel one to do vain or useless things,' applies."

In the case of *Miller* v. *Delaware Ins. Co.*, 14 Okla. 81, 75 p. 1171, 65 L. R. A. 173, 2 Ann. Cas. 17, the court used this language:

"This inventory and iron-safe provision is intended to have reference only to such articles of merchandise as constitute stock in trade, and the purpose of the clause is to provide evidence from which to determine what the actual loss sustained is, in case of fire. * * * General merchandise, however, is a character of property which is at all times changing. The amount of stock in trade on hand one day is but little, if any, evidence of what may be on hand at another time. Upon the one hand, the stock is being depleted by sales made, while, upon the other, it is being replenished by purchases. All business men know that the amount of stock kept by any merchant fluctuates very materially. *. * *''

Since Meloy was not a dealer in rice, but was only storing his own rice in his own granary, and no change taking place in the amount thereof from day to day, it would be a vain and useless thing to say that he must comply with these so-called "iron-safe" and "record-warranty" clauses by keeping a set of books and doing the other things required therein.

Appellants' next contention is that the record, such as was kept, showing the amount of rice in the granary, was not exhibited to their adjuster, and that the failure to do this canceled the policies. Powell, the adjuster, testified that he asked Meloy to show him the record, and that Meloy had nothing to show him, but Meloy testified on this point as follows: "Q. Did you have that book at the time? A. It may have been at the house. I didn't show it to Mr. Powell. It was at the house, and Mr. Powell did not want to see it. I showed it to the State Fire Marshal; he copied it;" and further testified that Powell said the only question was the amount of the rice. The record of the amount of rice threshed and put in the granary was introduced in testimony, and showed the exact amount of rice in the granary at the time the policies were issued and at the time of the fire, and the jury has decided this question against appellants' contention.

Furthermore, the demand and acceptance of the premium after the fire, and after the adjuster had made his investigation, and with full knowledge of the alleged breach of the "record-warranty" or "iron-safe" clause, constituted a waiver of these defenses. After Powell had been to see Meloy about adjusting the loss in the latter part of April, and after the appellees had furnished original and supplemental proofs of loss, and 54 days after the fire, appellants demanded and accepted, on the 8th day of May, the premiums on these policies. They did not return the same or offer to return same up to and including the time of the trial. Under these circumstances, appellants will be held to have waived these defenses.

In *Scottish Union & National Ins. Co.* v. *Wylie,* 110 Miss. 681, 70 So. Rep. 835, the court said:

"By the acceptance of the premium by the agent of the insurance company after the fire, when he had knowledge both of the mortgage on said property and of the other additional insurance upon the same, he waived all irregularities which might or could have existed, either in the issuance or during the continuation of said policy." *Insurance Co.* v. *Smith,* 79 Miss. 144, 30 So. 362; *Insurance Co.* v. *Dobbins,* 81 Miss. 623, 33 So. 504; *Farmers' Alliance Ins. Co.* v. *Ferguson,* 78 Kansas 791, 98 Pac. 231; *Manning* v. *Connecticut Fire Ins. Co.,* 176 Mo. App. 678, 159 S. W. 750.

It is next urged that the court erred in refusing to postpone the trial on appellant's motion so to do from 6:30 in the afternoon until the following morning, instead of adjourning to 7:45 P. M. This is based on the ground that the father of one of the attorneys for appellant was seriously ill and was calling for his son to be with him during the night, and the attorney wished to be with his father during the night. A physician, who was the brother of the attorney, testified to the effect that the presence of his brother at his father's bedside was unnecessary, and the record further shows that appellants were ably represented by another attorney, who proceeded with the trial of the case. The court overruled the motion, and took an adjournment to 7:45 P. M. Appellants do not undertake to show that they were prejudiced in any way by the absence of the other attorney. This was a matter wholly within the discretion of the trial court, and its action will not be disturbed on appeal, unless there is a positive showing of abuse of such discretion, or prejudice against appellants' right.

It is finally insisted that the action of the court in fixing the attorney's fee in each case at $1,000 is erroneous and excessive, in view of the decisions of this court in *Maryland Casualty Co.* v. *Maloney,* 119 Ark. 434, 178 S. W. 387; *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554,

164 S. W. 720, and in other cases where the fees were reduced to 10 per cent. of the amount of the judgment. We would follow these cases in this case if the record reflected that counsel for appellants objected and excepted to such allowance as being excessive. But the record in this case does not show that appellants either objected or excepted to the ruling and judgment of the court, and we cannot therefore reduce it.

We find no error in the record, and the judgment is accordingly affirmed.