ÆTNA INSURANCE COMPANY *v.* DAGGETT & YANCEY.

Opinion delivered April 30, 1928.

*Mann & McCulloch* and *McMillen & Scott,* for appellant.

*Coleman & Riddick,* for appellee.

McHANEY, J. On January 1, 1923, appellant issued to appellees a fire insurance policy, No. 100,019, insuring the buildings and certain personal property on the plantation owned by appellees, known as the Grant place, against loss or damage by fire, in the sum of $9,200, distributed as follows: $800 on barn No. 1, $600 on barn No. 2, $1,000 on grain of all kinds, $300 on hay, straw, etc., $1,000 on harness, saddles, wagons and farm implements, and $5,400 on 28 tenant buildings.

The total premium was $941.65, payable $188.33 in cash and $188.33 due and payable on the first day of January for the years 1924, 1925, 1926 and 1927, and for the deferred payment notes were given, each of which provided that, if any installment be not paid when due, the policy would not be effective while said installment remained unpaid; and the policy contained the following provision: "If any such notes or installments be not paid when due, this policy shall be suspended, inoperative, and of no force or effect while said note or installment remains unpaid, and it is hereby agreed that this

company shall not be liable for any loss or damage occurring during such default.''

On February 16, 1924, appellant issued another policy to appellees, No. 537, in the sum of $1,000, covering the harness, wagons, farm implements, tools, etc., on the Grant place. Appellees paid the premium notes due January 1, 1924, 1925, 1926, but failed to pay the one due January 1, 1927, until the 13th day of January of that year, on which date appellee Jesse Daggett, who kept the books and looked after insurance matters for the partnership composed of himself, C. E. Daggett and C. E. Yancey, mailed a check covering the last premium note to appellant at Oklahoma City, which was received on January 15, by appellant. Receipt of such check was acknowledged from the Oklahoma office of appellant under date of January 17. The Home Fire Insurance Company had a blanket policy for $6,000 covering generally tools, harness, buggies, corn, feed, etc., without any particular distribution on the separate items of property. On January 12, barn No. 2, under policy 100,019, grain of the value of $6,288 and tools of the value of $944.79 were destroyed by fire. The Home Company paid $2,193.78 of the loss on grain and $1,114.10 of the loss on tools as its share of the loss covered by the two companies.

Appellant sent two notices to appellees regarding the installment note due January 1, 1927, one advising them of the due date, and the second, after January 1, reminding them that the installment had not been paid, in which it called attention to the fact that, by the provision of the note and the policy, the insurance thereunder was suspended while the note remained unpaid. Jesse Daggett was away from his office from January 1 to the 13th, and, on returning to his office on the latter date, found the notice regarding the note on his desk, at which time he immediately sent check to cover, at a time when he knew nothing about the fire having occurred the day before, and did not learn thereof until the next day. On Saturday, January 15, the manager on the Grant place

came to Marianna and reported to appellees that barn No. 2 and its contents had been destroyed by fire on the 12th, and this was the first knowledge that appellees had that the barn had burned. They had heard that one of the small cabins on the place back of the barn had burned. Mr. Hugh Mixon, the local agent, was immediately notified of the fire. Mixon received this notice of the loss under both policies of appellant on January 15, but did not send in his agency report covering the loss to the company until Monday, the 17th. He made two reports to the company, one under policy 100,019, and the other under policy 537. In the report of the loss on policy 100,019 he inadvertently reported the loss as having occurred on the 17th, whereas under policy 537 he correctly reported the loss as having occurred on January 12. Both reports were received by appellant at its Oklahoma City general office on January 19, four days after the receipt of the money covering the premium note due January 1. Mr. Mixon, the local agent, assured appellees that appellant would settle the loss promptly, but his statements in this regard were made without any knowledge that the premium note was in default of payment at the time of the fire.

The Home Company settled its share of the loss promptly, but an adjuster for appellant did not go to Marianna until March 16, at which time the high water from the overflow covered a large territory, extending from the outskirts of Marianna across the Grant place, some nine miles distant. Appellees secured for the adjuster a boat in which to get to and inspect the loss, and paid the charges therefor. On arriving at the place he was advised that the fire occurred on the 12th. He returned to Marianna, and, upon Mr. Daggett's refusal to sign a nonwaiver agreement, he left without adjusting the loss, but made no contention that there was no liability on account of failure to pay the note prior to the fire. The only complaint he made was regarding the additional insurance on the property covered by the Home policy, which he suggested was not permitted by

appellant's policy. On March 17 the adjuster sent a written report to appellant, advising, among other things, that the fire had occurred on January 12. On March 24, appellant having taken no further steps to adjust the loss, appellees instituted this action to recover $1,624.90 under both policies. The case was submitted to the jury, and a verdict was returned in said sum, plus interest, penalty and attorney's fees, from which is this appeal.

Appellant admits liability under policy 537, and makes no contention here against it thereunder. Its principal contention is that policy 100,019 was not in force at the time of the fire, by reason of the failure of appellees to pay the premium note prior to the fire. It is undisputed that the note was not paid until after the fire, and it is undisputed that both the note and the policy provide that the company shall not be liable for any loss occurring during default in the payment of the note. Counsel for appellant, in their brief, say: "The fire having occurred during the time the policy was suspended, appellant is not liable under that policy, unless there was a waiver of the suspension." Our attention is directed to several of our own cases and many from other courts holding to the effect that, when default occurs in the payment of a note given for the premium, or an installment of the premium on an insurance policy, the clause providing for suspension during the time of default is self-operating, and the policy is automatically suspended without notice to the insured. Two of our leading cases on the subject holding to this effect are *Jefferson Mutual Ins. Company* v. *Murray,* 74 Ark. 507, 86 S. W. 813 and *Patterson* v. *Equitable Life Ins. Society,* 112 Ark. 171, 165 S. W. 454. We agree to these decisions, but we do not consider that they are controlling in the case at bar. Here the policy in question, although covering many different items of property, was one indivisible contract. Appellees did not suffer a total loss under this policy, but only three or four items covered by the policy were involved. The policy covered two barns, 28

tenant houses, and many different items of personal property. Only one barn was destroyed, together with a lot of grain and farming implements. The payment of the premium on January 13, received by the company on the 15th, was for the full term of one year, and covered the total liability of appellant on all property mentioned in the policy for the full term of one year, and not from January 15 or January 17. Appellant's agent in Marianna had notice on the 15th that a loss had been sustained under both policies on the 12th. He so recorded the loss in his agency records. He waited until the 17th to report the loss, and then, through error, reported the loss under the policy in question as having occurred on the 17th, the very date he was sending the notice of the loss under policy 537 as having occurred on the 12th.

Appellant's general office at Oklahoma City knew, on the 19th day of January, that this fire had occurred on January 12, and the slightest inquiry from its own agent at Marianna would have disclosed its agent's error in reporting the loss under this policy as having occurred on the 17th. Therefore on the 19th day of January it had notice that the fire occurred on the 12th, instead of the 17th, both through its own agent at Marianna and through his report under policy 537, and it elected to keep the whole premium for the whole year's insurance until ten or twelve days after suit was brought to recover under both policies, when it returned the whole amount of the premium to appellees, which they refused to accept. Under such circumstances, we think it would be manifestly unjust to permit appellant to retain this premium for a period of nearly three months, during which time appellees were led to believe, both by the assurances of the local agent, Mr. Mixon, and the silence of appellant in this regard, that appellant would settle its liability under this policy. During all this time the appellant's general agent at Oklahoma City knew that the fire had occurred on the 12th day of January, or could have so known by reference to the report of the loss under policy 537, and by thus keeping the premium until after it had

sent its adjuster to adjust the loss, and until after suit had been brought to enforce payment of the policy, it must be held to have waived its right to insist upon enforcing the suspension clause in the policy. Even on the adjuster's visit to Marianna he raised no question regarding the failure to pay the premium when due. It may be said that he did not know of this fact, but appellant's general agent did know of it. This clause, regarding the suspension of the policy on failure to pay the premium on the date specified, was inserted in the policy for the benefit of appellant, and, like any other clause for its benefit, with the knowledge of the facts before it, may be waived by an actual agreement to that effect, or by its affirmative conduct inconsistent therewith. Certainly it could not be said that, if appellant had extended the time of payment by agreement with appellees, they could still insist on the non-effectiveness of the policy, and it occurs to us that, by retaining the premium for the period of time it did retain it, with the knowledge of the date of the fire before it, thereby inducing appellees to believe that the policy was in effect, and that this clause therein would not be insisted upon, constitute an election on the part of appellant to treat the policy as in force and effect as regards this clause.

In addition to this, with the knowledge of the date of the fire before it, appellant caused its adjuster to go to Marianna to adjust this loss, and at considerable trouble and some expense the appellees provided him means to get to and from this property.

In the recent case of *American Life Assn.* v. *Vaden,* 164 Ark. 86, 261 S. W. 320, this court said:

"It occurs to us that the above affords substantial testimony to carry to the jury the question of whether the company, after having knowledge that the note for the first premium had not been paid at the time of the death of Cox, did not, by its affirmative conduct for several months thereafter, induce the appellee to believe that it would not insist on a forfeiture because of such nonpayment, and thereby cause her unnecessary expense,

and put her to unnecessary trouble, while acting under the belief that the company intended to settle her claim."

Again, in the same case, the court said: "The jury might have found that the company, in arousing these false hopes, had waived a forfeiture, under the doctrine announced by this court in numerous cases."

In *Camden Fire Ins. Assn.* v. *Meloy,* 174 Ark. 84, 294 S. W. 378, we said: "Further, the demand and acceptance of the premium after the fire, and after the adjuster had made his investigation, and with full knowledge of the alleged breach of the 'record warranty' or 'iron-safe' clause, constituted a waiver of these defenses."

We there quoted from *Scottish Union & National Ins. Co.* v. *Wylie,* 110 Miss. 681, 70 So. 835, as follows: "By the acceptance of the premium by the agent of the insurance company after the fire, when he had knowledge both of the mortgage on said property and of the other additional insurance upon the same, he waived all irregularities which might or could have existed, either in the issuance or during the continuation of said policy."

In 3 Joyce on Insurance (2d ed.) § 1369, it is said: "The retention of a premium on a fire insurance policy, after knowledge of a breach of a condition involving a right to forfeiture, is an election to waive such breach and continue the policy in force, and the policy should then be construed as though such condition had never existed." See also 24 Cyc. 194, and *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123, 235 S. W. 412.

Appellant does not dispute the principles announced in the quotation above made, but says a distinction should be made in the breach of a condition involving a right to a forfeiture and a clause in the policy providing for the suspension of the policy for failure to pay the premium; that in the latter case it automatically goes into operation and makes the policy null and void *ipso facto,* and cannot be waived. In other words, appellant says it is insisting upon the contract as it stands. However, as we have already seen, the liability of appellant here involves only

two or three items of a policy covering many different items, and, being one contract, appellant had the right to elect as to whether it would treat the whole policy as in effect, or to treat the whole policy as void and of no effect for nonpayment of the premium prior to the fire by returning the whole amount of the premium immediately upon receipt of information that the fire had occurred prior to the payment of the premium. Not having done so, it having elected to keep the premium for nearly three months after receipt of knowledge of the correct date of the fire, we think appellant is bound by its election to treat the whole policy as being in effect from the first day of January, throughout the remainder of the year.

Appellant also complains of instructions Nos. 1 and 2 given at appellee's request. They are as follows:

"No. 1. If you find that the company, with knowledge of the forfeiture, neglected to insist upon it, but by its conduct recognized and treated the policy as being in force, and induced the insured to believe.that the company would not insist on the forfeiture and to incur expense and trouble by reason of such belief, then the company waived the forfeiture, and plaintiff is entitled to recover.

"No. 2. Any agreement, declaration or course of action on the part of an insurance company which leads a party insured to honestly believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will constitute a waiver of the forfeiture."

They were correct declarations of law, as will be seen from the principles already discussed and announced herein, and it becomes unnecessary to discuss them further. We find no error, and the judgment is affirmed.