H. J. McCaleb and R. E. Phelan

*v.*

American Insurance Company of Newark, New Jersey, et al.

(*Jackson*, April Term, 1959.)

Opinion filed May 1, 1959.

(1)

2

M. H. HOLMES, JR., HARRELL & NOWELL, Trenton, for petitioners.

GAYLE MALONE, Trenton, for respondents.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The fire insurance policy upon which McCaleb and Phelan sought to recover for the burning of their residence contained the following:

"28 Conditions suspending or restricting insurance.

"Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring

"33 (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days",

unless upon notice, the insurer waives this condition.

The building involved, a residence, at the time it was burned, had been continuously vacant for considerably more than sixty (60) days after the issuance of this policy.

The insurer denied liability because of such excessive time of vacancy. The insured's replication charged that the insurer, through its general agent at Trenton, had waived this condition. That it could orally do so is conceded.

At the conclusion of the plaintiff's evidence, the Trial Court directed a verdict for defendant on the ground that there was no evidence that the plaintiff owners had given notice of a vacancy continuing beyond the sixty (60) day period. The Court of Appeals, with one of its members dissenting, held that the evidence was such as to require a submission of the case to the jury "on the merits". The draftsman of this Court's opinion, being uncertain as to who was right about the matter, granted the writ. Further briefs and oral arguments followed in usual course.

Due to the very careless and irregular manner employed by the parties in their handling of a transaction very material to the outcome of this controversy, this Court cannot be completely satisfied with whatever decision it makes.

This was a five year fire insurance policy issued in July 1953. The premium was payable in five annual installments. It was first issued to one Williford, then owner of the premises, by the Baugus Insurance Agency at Trenton, a partnership composed of T. A. and G. A. Baugus. At some undisclosed time prior to July 27, 1956 (date Williford paid the annual premium then due) he, Williford, met T. A. Baugus in a bank and, in the course of conversation, said to him that this residence had been vacant since either the last of February, 1956, of the first of March following. Baugus' reply was "we

ought to file a vacancy report''. Such a report is filed by the agency and, according to custom, a vacancy permit, if granted, attached to the policy. It is obvious that no permit is needed under the terms of the policy unless there is to be a vacancy in excess of sixty days. Reasoning from that fact, it seems to be a justifiable conclusion that the conversation took place in the bank after the residence had been vacant for more than sixty days.

No permit permitting a vacancy beyond the sixty (60) day period was ever attached to this policy. Apparently, the policy was never taken by Williford to the Baugus Insurance Agency for that purpose. Nor was there any direction by the agency that it be brought in for entry thereon of such a permit. This statement is based on the fact that when Williford later sold to plaintiffs the property on which was this residence he delivered the policy to these purchaser plaintiffs along with the deed of conveyance.

The plaintiffs refunded to Williford the unearned part of the premium paid for the year commencing July 27, 1956, took the policy to Baugus Insurance Agency, which endorsed thereon the following:—''Notice is accepted that property covered under this policy has been sold, and that ownership now vests in H. J. McCaleb and R. E. Phelan''. This was on September 10, 1956. The residence was destroyed by fire on December 27, 1956, which was more than one hundred (100) days after this endorsement.

This endorsement was entered by T. A. Baugus. He is the Baugus partner with whom the bank conversation was had. The only evidence of any conversation between

Williford and either Baugus as to this vacancy was this conversation had in the bank with T. A. Baugus, the one who endorsed the transfer.

At the time of this transfer on September 10, 1956 McCaleb and Phelan knew this residence was vacant. They did not say anything about that to T. A. Baugus at the time of this transfer endorsement, or thereafter. McCaleb says that "I understood Mr. Williford did that". G. A. Baugus never knew of a vacancy until after the fire. T. A. Baugus, the one who had the conversation in the bank, did not testify. And, as aforesaid, the verdict was directed at the close of plaintiff's evidence.

This residence was the dwelling of the owner or operator of the forty-eight (48) acre farm on which it was erected, five miles from Trenton. The farm was not being cultivated in 1956. The testimony of plaintiff McCaleb is that it is "not customary to rent property such as this by the month", though he does testify that "you could rent the house, you couldn't rent the land", meaning for the year 1956.

Based upon that testimony, it is the insistence of the plaintiffs that when T. A. Baugus learned that this residence was vacant in 1956 he was chargeable with knowledge that it would stay vacant probably the rest of that year.

On the other hand, it is the testimony of G. A. Baugus "that frequently in the rural sections houses are rented to persons though they aren't farming the land", and that such a rental on a month to month basis is a common practice.

In this connection, G. A. Baugus testifies that "to my knowledge, no vacancy permit will be extended by any

insurance company that I am familiar with for a period of longer than sixty days'' * * * and ''then you have got to turn around and do it all over again''. There is no evidence that the insured knew of such a requirement, once a vacancy permit had been granted.

█ It is conceded on all sides that the transfer of this insurance policy from Williford to McCaleb and Phelan as the insured constituted a new contract between the Insurance Company, on the one hand, and McCaleb and Phelan, on the other. The fact that the dwelling was vacant at the time of this new contract does not, per se, amount to a waiver by the Insurance Company of the condition that if it remained vacant for a period of more than sixty (60 consecutive days the Company shall not be liable for loss occurring during such excess period. The law on the subject is fairly thoroughly annotated in 96 A.L.R., commencing at page 1259. On page 1266 the annotator, citing a number of cases, says this:

''In another line of cases involving policies providing for forfeiture if the premises be or become vacant or unoccupied, and so remain for a specified length of time, the courts have adopted the somewhat logical rule that knowledge by the insurer's agent that the premises are vacant at the time the policy is issued does not waive a breach arising from vacancy continuing thereafter for a period in excess of that permitted by the policy, in which case the breach is not regarded as occurring at the inception of the risk.''

See also 4 L.R.A.,N.S., 758, and 29 American Jurisprudence, page 619, Section 815.

8

■ But this apparently well settled rule of law does not solve our problem. This is because of the rule that:

"where the policy is issued on vacant and unoccupied property with that knowledge and upon an agreement or with the expectation on the part of the insurer and the insured that the property is to remain vacant, the clause against vacancy is deemed waived." *Conley v. Queen Insurance Co.,* 256 Ky. 602, 76 S.W.2d 906, 907, 96 A.L.R. 1255, 1257, citing cases.

The controlling issues in this case are whether the Baugus Insurance Agency transferred this policy to Mc-Caleb and Phelan with the expectation that this residence might remain vacant a longer period than sixty (60) days from date of transfer, and, in transferring the policy, intended to waive that limitation upon the period of vacancy. If the answer should be in the affirmative, then the Company is liable; otherwise, not liable.

■■ This Court has concluded that the evidence is such that reasonable minds might draw different conclusions as to whether the answer to those issues should be in the affirmative or the negative. In reaching this conclusion, the Court has given effect also to the elementary rule that (1) if there is any reasonable doubt as to the conclusion to be drawn from the whole evidence upon the controlling issue, then the matter should be decided by a jury, and (2) in case of doubt as to whether there is a jury question, it is safer to leave it to the jury.

The judgment of the Court of Appeals reversing the judgment of the Circuit Court and remanding for a new trial will be affirmed, and the cause remanded for submission of the issues stated to the jury. Costs of the appeal will be adjudged against the Insurance Company.