PROVIDENT WASHINGTON INSURANCE COMPANY, Petitioner,

*v.*

BILL REESE and Wife, AVA REESE, Respondents.

373 S. W. 2d 613

(*Knoxville,* September Term, 1963.)

Opinion filed December 5, 1963.

Petition for Rehearing Denied January 8, 1964.

McKinley Green, C. T. Herndon, III, Johnson City, Green & Green, Simmonds, Bowman & Herndon, Johnson City, of counsel, for petitioner.

Thomas E. Mitchell, Johnson City, for respondents.

Mr. Justice Holmes delivered the opinion of the Court.

This is a suit brought on a policy of fire insurance by Bill Reese and wife, Ava Reece, against the Provident Washington Insurance Company. For convenience, we shall refer to the parties according to their status in the Chancery Court. In both the Chancery Court and in the Court of Appeals there was a recovery by complainants. We have granted certiorari, and the case has been argued at the bar of this Court.

In September 1957 the complainants purchased property known as the County Line Grocery on the Johnson City-Elizabethton highway. In making this purchase, the complainants borrowed $6,000.00 from the Hamilton

National Bank of Johnson City, the payment of which was secured by a trust deed on the property. This trust deed, among other things, provided that the complainants would keep the improvements on the property insured against loss from fire in an amount not less than the amount of the indebtedness, and that the policy evidencing the insurance would contain the usual mortgage clause making the insurance payable to the holder of the secured debt as its rights may be made to appear. The trust deed further provided that the policy evidencing such insurance would be delivered to and held by the holder of the indebtedness.

On September 12, 1957 the complainants applied for a policy of fire insurance on the improvements on this property. The defendant insurance company issued a standard fire policy in the amount of $7,000.00 through the Anderson Realty Company, defendant's agent in Johnson City. The original policy, containing a loss payable clause to the Hamilton National Bank of Johnson City, was delivered to the bank pursuant to the terms of the trust deed securing the debt. At about the same time, a memorandum of insurance was mailed by the Anderson Realty Company to complainants. This memorandum, among other things states:

"This certifies, that policy numbered as above *has been issued.*" (emphasis supplied)

and further states:

"This is furnished simply as a memorandum of said policy as it stands at the date of issue hereof, and is given as a matter of information only and confers no rights on the holder and imposes no liability upon this company."

The memorandum does not contain one entire printed page of the policy which states all of the conditions of the policy and contains the facsimile signatures of the President and Secretary of the company. The memorandum is not signed by the issuing agent of the defendant. Among the conditions stated on this page of the policy, which is not included in the memorandum, is the following:

"Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring * * * * (b) while a described building, either intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days."

Both the original policy and the memorandum show "property occupied as grocery store".

On January 23, 1959 the County Line Grocery was padlocked as a public nuisance by order of the Criminal Court of Washington County. Thereafter the building remained vacant until it was destroyed by fire on December 23, 1959. The complainant Bill Reese testified that at the time the building was padlocked it had been occupied by one Justin Land for approximately two years. Prior to Land's tenancy, Vernon Caughron had been a tenant of complainants in the property for an unstated period of time. After the fire, complainants paid the remaining indebtedness to the Hamilton National Bank.

The defendant company relied upon the above quoted vacancy clause as a defense. Both the Chancery Court and the Court of Appeals held that the defendant was estopped to rely upon the vacancy clause. In this connection, the Court of Appeals found:

"From the above evidence, it is apparent that the parties contemplated that only one policy of insurance would be issued by the defendant insurance company and that it would be mailed to the bank-mortgagee, with a duplicate policy to be issued to the complainants. It was further known and intended by the parties that the complainants were to rely on the duplicate copy of the policy given them by the defendant's agent as being the contract of insurance."

██ If there is any evidence in the record to support this concurrent finding, it is, of course, binding on this Court. T.C.A. 27-113.

Only two witnesses testified at the trial, Bill Reese, one of the complainants, and Randolph Anderson, the agent of the defendant who issued the policy. The agent testified that he intended to send the complainant an exact copy of the policy which was sent to the bank. Certainly, under these circumstances, if the complainant relied upon the memorandum as being an exact copy of the contract, and, because of the failure of the memorandum to include all the terms and conditions of the contract, he failed to take steps to procure a vacancy permit, the defendant company would be estopped to reply upon the vacancy clause. However, in this case, the complainant Reese testified he had never read the memorandum of insurance until after the fire and did not know of its contents until after the subject matter of the insurance had been destroyed by fire. Certainly there could have been no reliance upon the contents of the memorandum by the insured when he did not know the contents thereof prior to the destruction of the property.

At no time after the building was padlocked until after it was destroyed did the complainants notify the defendant that the building was vacant or attempt to procure a vacancy permit. Since the complainants did not know the contents of the memorandum, the presence or absence of provisions in the memorandum could not have influenced complainants in taking the course of action which they took.

The essential elements of equitable estoppel as related to the party claiming the estoppel are stated in 19 Am.Jur., Estoppel, Section 42, Page 643, to be, "(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." These same essential elements of equitable estoppel were recognized and applied by Mr. Justice Lurton, speaking for the Court, in *Taylor v. Nashville & C. Railroad Co.,* 86 Tenn. 228, at page 244, 6 S.W. 393, at page 398. These same requisites have since been held applicable to the doctrine of equitable estoppel in numerous cases—*Saylor v. Trotter,* 148 Tenn. 359, 367, 255 S.W. 590, 593; *Morristown Furniture Co. v. People's Nat. Fire Insurance Co.,* 149 Tenn. 214, 217, 259 S.W. 539, 540; *Molloy v. City of Chattanooga,* 191 Tenn. 173, 178, 232 S.W.2d 24, 26; *Lawrence County v. White,* 200 Tenn. 1, 8, 288 S.W.2d 735, 738.

Since the record shows without controversy in the case at bar that the complainant who testified did not know until after the loss what provisions were contained in or omitted from the memorandum of insurance, the

complainants could not be found to have acted to their prejudice by reason of anything in the memorandum.

In the present case, there is no evidence that Anderson, the agent of the defendant company, had any knowledge or notice of the vacancy of the building from the time it was padlocked until after the fire. In the recent case of *Cashen v. Camden Fire Insurance Ass'n.*, 48 Tenn.App. 470, 348 S.W.2d 883, in reversing a judgment for the plaintiff in a suit on a fire policy in which a violation of the vacancy clause was relied upon as a defense, the Court held that the fact that the local agent of the insurance company had read an article in the newspaper relating to the padlocking of the insured premises did not give the agent knowledge of the breach of the "unoccupancy provision in the fire insurance policy, nor can it be inferred from this knowledge that the agent knew or should have known that the building would continue to be unoccupied until the insurance coverage was suspended. Further, this knowledge placed no duty upon the agent to investigate to see if the premises were unoccupied or to see if they remained unoccupied." Page 480 of 48 Tenn. App., page 887 of 348 S.W.2d. In that case it was further contended that the acceptance of premium after the building was padlocked constituted a waiver of the vacancy clause. In rejecting this contention, the Court held that the acceptance of the premium without knowledge of the vacancy could not constitute a waiver of the vacancy clause.

In *McCaleb v. American Insurance Co.*, 205 Tenn. 1, 325 S.W.2d 274, the building insured by a fire policy was vacant at the time the policy was written. This Court held that the fact that the building was vacant at the time

the contract was made, and the insurance company had knowledge of such vacancy, did not amount to a waiver of the sixty day vacancy clause contained in the policy unless there was knowledge on the part of the insurance company that the property was expected to remain vacant beyond the period provided for in the contract.

In the case at bar there is evidence that the building was vacant when complainants purchased it and procured the insurance. There is no evidence that it remained vacant for as long as sixty days. The complainant testified, "I believe when I bought the property that Mr. Vernon Caughron went there for a while." Thereafter the property was continuously occupied until it was padlocked in January 1959. Admittedly it remained vacant and unoccupied from that time until it burned in December 1959.

The undisputed facts in the case at bar afford no basis for a finding that the defendant was estopped to rely upon the vacancy clause contained in the contract. The contract was delivered to the bank in accordance with the provisions of the trust deed executed by the complainants. The memorandum sent to the complainants does not purport to be the contract of insurance, and expressly provides that it confers no rights on the holder and imposes no liability on the defendant company. The record affirmatively shows the contents of this memorandum were not known to the insured until after the loss; therefore, it cannot afford the basis of any estoppel.

The Courts of Tennessee have long recognized that a vacancy clause in a fire policy is reasonable, valid, and binding. *Ridge v. Scottish Commercial Insurance Co.,* 77 Tenn. 507; *McCaleb v. American Insurance Co.,* supra;

*Carolina Insurance Co. v. St. Charles,* 20 Tenn.App. 342, 98 S.W.2d 1088; *Cashen v. Camden Fire Insurance Ass'n,* supra.

The decree of the Court of Appeals is reversed, and the case is dismissed at complainants' cost.

## Opinion on Petition to Rehear

The complainants have filed a petition to rehear, in which it is contended that the memorandum of insurance which was sent to Mr. and Mrs. Reese constituted the contract of insurance between them and the insurance company. This same contention was made in the original briefs and was fully considered by us.

In our former opinion, we pointed out that this memorandum contains no insuring clause but simply certifies that a policy "has been issued," and that it expressly provides that it confers no rights on the holder and imposes no liability upon the insurance company. It is not signed by anyone on behalf of the company.

It is argued in the petition to rehear that both the Trial Court and the Court of Appeals found as a fact that this memorandum was the contract of insurance and that this Court is bound by such concurrent finding of fact. T.C.A. 27-113. In response to this contention, we reply first by again quoting a part of our quotation from the opinion of the Court of Appeals. That Court stated, "it is apparent that the parties contemplated that only one policy of insurance would be issued by the defendant insurance company and that it would be mailed to the bank-mortgagee".

Next, we point out that the proper construction of an unambiguous written instrument presents a question

of law for the Court and not a question of fact. *Godson v. MacFadden*, 162 Tenn. 528, 39 S.W.2d 287; *Oman v. Tennessee Central Railway Co.*, 212 Tenn. 556, 370 S.W.2d 563.

The one contract of insurance issued by the defendant in this case was the policy sent to the mortgagee-bank in conformity with the terms of the trust deed executed by Mr. and Mrs. Reese. The memorandum is just what it says it is—a memorandum that confers no rights and imposes no liability. In our original opinion we pointed out that had there been any evidence that the complainants were misled to their prejudice by this memorandum, then there would have been a basis for holding the defendant company was estopped to rely upon the vacancy clause in the contract. The undisputed proof was to the contrary.

All of the contentions of these parties have been fully considered by the Court. The petition to rehear is denied.