Dana REED, Appellee,

v.

**WASHINGTON COUNTY BOARD OF EDUCATION, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 22, 1988.

Tim Wibking, Woods & Woods, Nashville, Mark Hicks, Jonesborough, for appellant.

Charles Hampton White, Richard L. Colbert, Cornelius & Collins, Nashville, for appellee.

OPINION

FONES, Justice.

In this teacher tenure case, the trial court held that plaintiff, Dana Reed, was a tenured teacher in the Washington County School System at the time of his dismissal. The trial court found that defendant, the Washington County School Board [Board], had not provided plaintiff with the procedural rights upon dismissal to which he was entitled as a tenured teacher in the Washington County School System, and ordered plaintiff reinstated to his former status as a tenured teacher. In addition, the trial court awarded plaintiff as damages the salary lost due to the Board's misconduct, plus interest. The Board has appealed directly to this Court pursuant to T.C.A. § 49–5–513(i). *See Hyde v. Bills,* 696 S.W. 2d 355 (Tenn.1985).

In 1979, the Board elected plaintiff, a certified teacher in this state who holds Bachelor of Science and Master of Arts Degrees from East Tennessee State University, to the position of teacher for the 1979–80 school term and assigned him to the Davy Crockett High School. The following year, the Board elected plaintiff to the position of teacher for the 1980–81 school term and assigned plaintiff to Boones Creek Middle School. On 9 April 1981, the Board elected plaintiff to the position of teacher for the 1981–82 school year, and once again assigned him to the Boones Creek Middle School.

Subsequently, Art Foster, Supervisor of Vocational Education for the Washington County Schools, asked plaintiff if he would accept an assignment to the University School at East Tennessee State University. It is this transfer which forms the basis of the dispute here. Plaintiff indicated he would, and on 9 July 1981, the Board voted to transfer plaintiff and two other teachers to the University School for the 1981–82 school year. At this time, plaintiff did not resign or request a leave of absence, and his employment with the Washington County School System was not otherwise terminated.

The University School is operated pursuant to a contract executed in 1980 between East Tennessee State University [ETSU] and the Board. Under this agreement the Board and ETSU agreed to operate a laboratory school for grades one through twelve for "the observation, in-service, and preservice training" of teachers. Students for the school were to primarily be students who would otherwise have attended Washington County Schools. ETSU agreed to provide physical facilities, and utilities for the school. In addition, ETSU assumed responsibility "for the salary, assignment, supervision, retention, promotion, tenure and discharge of all professional and administrative and support personnel" of the school. New school personnel were to be appointed by the University president; however, these appointments were to be "upon the nomination of the county superintendent of school and subject to the confirmation of the county board." In return, the Board agreed to transfer to the university "all funds generated from whatever source [except bond issuance monies] received for the support of the campus school on a per capita basis determined by [average daily attendance] equal to that provided for the same grades to other schools in the county system." The Board agreed to count the University School students as county school students when the Board reported average daily attendance figures for the generation of federal, state, county and city revenues. The University agreed to supply the Board with any statistical reports necessitated by the requirements of federal, state,county, and city governments or agencies. The agreement also established an advisory board for the Board and University to consult in the administration of the University School. This Board consisted of the president of ETSU, the Dean of the College of Education, the director of the University School, the superintendent of the county schools, the chairperson of the county board, a member of the Board, and two lay people—one selected by the Board and one selected by the University.

Nathan Hale, superintendent of the Washington County School System from September 1980 to August 1984, testified

that he was informed by Dr. Ronald Beller, the President of ETSU, that the county superintendent was responsible for the operation of the University School. And in actual operation, the Board approves such items as field trips and the University School calendar, and recommends career ladder certification for University School teachers. The Board also approved a self-study by the University School for accreditation by the Southern Association of Colleges and Schools. The Board transfers teachers to and from the University School utilizing the procedure established by T.C.A. § 49-5-510 for transfer of teachers within the school system. Finally, the basic funds for operation of the University School, including teachers' salaries, are included in the Board's budget. These funds are then transferred to the University for operation of the University School.

In September, 1981, after beginning his duties at University School, plaintiff was presented with and instructed to sign a document captioned "East Tennessee State University—Notice of Tenure–Track Appointment and Agreement of Employment For Faculty." Plaintiff signed this document, which confirmed plaintiff's position as an instructor at the University School on an annual basis, subject to renewal by ETSU. This document also provided that plaintiff's position was a tenure-track appointment with no right to continued employment, and subject to a seven year probationary period.[1]

Plaintiff taught at the University School during the next four school terms—1981–82; 1982–83; 1983–84; and 1984–85. By a letter dated 25 May 1984, plaintiff, Ronald E. Beller, President of ETSU, informed plaintiff that his contract with the University School would not be renewed following the 1984–85 school year. At a meeting on 20 August 1984, the Board denied plaintiff's request for a transfer from the University School to another school. Although this action effectively terminated plaintiff's employment, the Board did not present

plaintiff with a notice of dismissal or give plaintiff written notice of charges.

Plaintiff then attempted to appeal his dismissal from the University School through the University system. On 27 August 1985 the Chancellor of the State University and Community College System, Dr. Roy Nicks, notified plaintiff that the non-renewal of his tenure-track appointment at the University School was not subject to appeal and was therefore final.

On 24 September 1986, plaintiff filed this action for reinstatement and damages against the Board. In his complaint, plaintiff alleged that he was a tenured teacher with the Washington County School System under the Tennessee Teachers' Tenure Act, T.C.A. § 49-5-501 et seq., by virtue of his six years service with the Washington County School System—one year at Davy Crockett High School, one year at Boones Creek Middle School, and four years at the University School. Plaintiff alleged that the Board dismissed him at the conclusion of the 1984–85 school year without filing written notice of charges or otherwise complying with the procedural requirements for dismissal of tenured teachers. See T.C.A. § 49-5-511 and § 49-5-512. Finally, plaintiff alleged that the Board's action violated his due process rights under the Fourteenth Amendment. Plaintiff requested reinstatement and an award of damages equal to the salary lost due to the Board's misconduct.

Thereafter, the parties submitted the case for decision by the trial judge without trial, on the pleadings, motions, briefs, affidavits, depositions and exhibits thereto, and answers to requests for admissions.

The trial court found that the University School is a joint venture by ETSU and the Board, and held that plaintiff continued to build seniority towards tenure while he was assigned to the University School. The court also found that plaintiff did not waive his right to tenure in the county system when he signed the employment agreement with ETSU because the plaintiff did not

---

1. The probationary period for teachers with the Washington County School System is three years. *See* T.C.A. § 49-5-503 and § 49-5-504.

know and was not informed that transfer to the University School would jeopardize his tenure status with the county system. The court noted that plaintiff's employment with the school system was not terminated —either by resignation, leave of absence, or firing—when he was transferred to the University School. In addition, the court noted that the Board uniformly transferred teachers to and from the University School under the procedures for transfer within the school system, and tenure in both systems was not inconceivable.

As plaintiff had served a total of six years with the county system at the time of his dismissal from the University School and had not waived his tenure rights, the court concluded that plaintiff was, at the time of his dismissal, a tenured teacher in the Washington County School System. The court then found that the Board violated plaintiff's constitutional right to procedural due process under the Fourteenth Amendment by failing to comply with the procedures for dismissal of a tenured teacher provided by T.C.A. § 49–5–511 and T.C.A. § 49–5–512. The court ordered plaintiff reinstated as a teacher in the Washington County School System and awarded plaintiff damages equal to the salary plaintiff lost due to the Board's misconduct plus interest. *See* T.C.A. § 47–14–123.

I.

Initially, we note that T.C.A. § 49–8–105 authorizes universities such as ETSU to either establish a training school for practice teachers, or make arrangements with local school boards for student teachers to obtain teaching experience. If the university elects to establish a training school, the university president may contract with the local school systems to teach students who would otherwise attend these local schools. In return, the training school is to receive all state and federal funds "including per capita allocations, equalization funds, capital outlay funds, textbook funds," and any other funds allocated for the operation of Tennessee public schools. T.C.A. § 49–8–105(b). Finally, the statute provides that the university training schools must be wholly under the direction of the university president. T.C.A. § 49–8–105.

■ By the terms of the agreement between the Board and ETSU, the University School is not *wholly* under the control of the University President. Therefore, the University School is not a training school pursuant to T.C.A. § 49–8–105(b). Likewise, the University School is clearly not a Washington County School System school as the authority of the county superintendent and the Board over all phases of the school program is not as "full and ample as over all other county schools." *See* T.C.A. § 49–3–314. The chancellor found that the University School is a joint venture of both entities. That finding is not disputed by either party.

■ The chancellor also found that because the University School is a joint venture, plaintiff continued to build seniority towards tenure in the Washington County System while assigned to the University School. The Board argues that the contract between the Board and ETSU governing the University School precludes this finding.

The contract provides that:

The University agrees to assume responsibility for salary, assignment, supervision, retention, promotion, tenure and discharge of all professional and administrative and support personnel of the Campus School. New Campus School personnel will only be appointed by the University President upon nomination of the County Superintendent of Schools and subject to the confirmation of the County Board.

This provision merely governs the duties between the two parties to the contract. It does not preclude a teacher employed by the Washington County System and transferred to the University System from retaining his seniority and status within the county system. Therefore, this issue is without merit. In light of the facts in this case, we cannot say that the chancellor erred in holding that plaintiff continued to

build seniority towards tenure while employed at the University School.

## II.

Next, the Board argues that the chancellor erred in finding plaintiff to be tenured because plaintiff has not satisfied the four prerequisites to permanent tenure under the Teachers' Tenure Act.

The Board notes that T.C.A. § 49–5–503 establishes four prerequisites to permanent tenure for a teacher in the public schools of this State. The teacher must:

(1) have a degree from an approved four (4) year college;

(2) hold a valid professional certificate based on training covering the subjects or grades he is teaching;

(3) have completed a probationary period of three (3) school years or not less than twenty-seven (27) months within the last five-year period, the last year employed as a regular teacher; and

(4) be *reemployed* by the board for service after the probationary period.

T.C.A. § 49–5–503(1).

In addition, T.C.A. § 49–5–504 provides:

(a) Any teacher, otherwise qualified for "permanent tenure" status or "limited tenure" status shall serve three (3) years or not less than twenty-seven (27) months within a five (5) year period as a probationary teacher before acquiring "permanent tenure" status or "limited tenure" status.

(b) Upon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which he or she is qualified by college training and licensing; provided that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.

(c) Time spent on leave of absence except sick leave as provided in § 49–5–710 shall not be counted as a part of the probationary period.

**2.** The recommendation of the superintendent noted in T.C.A. § 49–2–301 is not an essential

The Board concedes that plaintiff has satisfied the first three prerequisites for tenure[2]. The Board argues, however, that plaintiff has not satisfied the fourth prerequisite to permanent tenure in that the Board has never taken affirmative action to reemploy plaintiff after plaintiff completed his probationary period.

Defendant's contention that the Tennessee Teachers' Tenure Act does not automatically confer permanent tenure status upon an otherwise qualified teacher upon completion of the probation period is correct. *Sanders v. Vinson*, 558 S.W.2d 838, 843 (Tenn.1977). Tenure status is not conferred until the board of education takes *affirmative* action to confer such status. *Id.* at 842. Affirmative action means the teacher must be either reemployed or retained in the system by the Board. *Id.; see also Coleman v. Acuff*, 569 S.W.2d 459 (Tenn.1978); *Snell v. Brothers*, 527 S.W.2d 114 (Tenn.1975). In *Coleman v. Acuff, supra*, the teacher completed the statutory probationary period during the middle of the school year and before the termination of his contract with the Board. He completed the remainder of the school term, but was not reemployed by the Board for the next term. This court held that the teacher's continuing service after the completion of the probationary period did not automatically confer tenure status because the Board had not reemployed the teacher after completion of the probationary period—the fourth prerequisite.

In *Snell v. Brothers, supra*, the teacher completed the probationary period, and was employed for an additional year beyond the probationary period because the school board failed to comply with the requirements for termination of a teacher established by the Teachers' Continuing Contract Law, T.C.A. § 49–5–409. The Board did not send the notice of dismissal until after the time for such notice under the Continuing Contract Law. Therefore, the teacher was entitled to employment for the next school term. This Court held that the

requirement for tenure. *Sanders v. Vinson*, 558 S.W.2d 838, 843 (Tenn.1977).

teacher did not acquire tenure by virtue of the employment for an additional year beyond the probation period, because the Board did not affirmatively act to reemploy the teacher pursuant to T.C.A. § 49–5–504.

▓ In this case the parties concede that the Board itself did not reemploy plaintiff upon plaintiff's completion of the probationary period. However, the facts of this case are unique. Plaintiff was transferred to the University School by action of the Board. The Board did not attempt to terminate plaintiff's employment at that time or at any other time. Plaintiff did not resign and did not request or receive a leave of absence. Thereafter, plaintiff completed his probationary period at the University School. In addition, the University School retained plaintiff as a teacher for three years beyond the probationary period. Because of the nature of the University School, plaintiff remained under the control of the Board at all times during his tenure at the school. In fact, plaintiff was subject to transfer back to the Washington County System. The trial judge found, and we agree, that the Board was a co-equal partner in the operation of the University School, and that in transferring teachers to and from the University School the Board uniformly followed the procedure mandated by T.C.A. § 49–5–510 dealing with transfers *within* the school system and by T.C.A. § 49–5–401 dealing with election and assignment of teachers. From all of the joint aspects of the University School operation, we find that the retention and re-election of plaintiff for three years beyond the probationary period provided in T.C.A. § 49–5–503 was likewise a joint affirmative action by the Board and the University that satisfied the fourth prerequisite of that section.

### III.

The Board argues that plaintiff waived his tenure rights in the county system when he signed the employment agreement with ETSU because that agreement provided that plaintiff was on a "tenure-track" with the University System. In addition, the Board suggests that plaintiff may have violated T.C.A. § 49–5–410 which deals with "moonlighting" by teachers.

▓ As this Court noted in *Chattem, Inc. v. Provident Life & Accident Ins. Co.,* 676 S.W.2d 953, 955 (Tenn.1984), "[a] waiver is a voluntary relinquishment by a party of a known right." Waiver "may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct...." *Baird v. Fidelity Phenix Fire Ins. Co.,* 178 Tenn. 653, 665, 162 S.W.2d 384, 389 (1942). However, if an individual does not know of his rights or if he fails to understand them he cannot waive those rights. *Faught v. Estate of Faught,* 730 S.W.2d 323, 326 (Tenn.1987).

An express waiver must be distinguished from implied waiver also known as equitable estoppel. The elements of implied waiver are:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Provident Washington Insurance Company v. Reese,* 213 Tenn. 355, 373 S.W.2d 613, 615 (1964).

*Chattem v. Provident Life & Accident Insurance Company, supra.*

▓ The Board submits that the execution by the plaintiff of the employment agreement with ETSU satisfies the requirements listed above for express waiver. Plaintiff's testimony indicates that he did not intend to waive his tenure rights in the county system. The uncontroverted proof is that plaintiff was never advised that execution of the employment agreement could jeopardize his tenure status with the Washington County Schools. The employment agreement itself is a form agreement which instructs the recipient to return it within fifteen days. It does not advise that execution could waive any right to tenure in the Washington County System, or any other system. In addition, the Board uniformly transferred teachers to and from the University School. That practice could,

as the chancellor noted, lead a teacher to believe that service at the University School would not affect his status with the county system.

Defendant submits that plaintiff is a well-educated man with long experience in teaching. The conclusion to be drawn from this proposition is that plaintiff must have known he waived his tenure rights by executing the contract. However, the testimony of Mr. Hale, a member of the Board and former superintendent of the Washington County Schools from 1980 to 1984, indicates uncertainty as to the tenure status of teachers transferred to and from the University School. Finally, the Board notes that plaintiff attempted to appeal his dismissal through the University System. Plaintiff only appealed his dismissal from the University School itself, and not his dismissal from the county system. Plaintiff's attempted appeal to the University System is consistent with the fact that tenure in both systems was conceivable.

In light of the above, we cannot conclude that plaintiff waived his rights to tenure in the county system by executing the employment agreement in question. The alleged violation of the moonlighting statute, T.C.A. § 49-5-410, is without any merit whatsoever.

### IV.

 Finally, the Board argues that plaintiff did not timely file this action for judicial review in accordance with the provisions of T.C.A. § 49-5-513. That section states that a tenured teacher may obtain judicial review of dismissal by filing a petition in chancery court "within thirty (30) days from receipt by the teacher of notice of the decision by the board." T.C.A. § 49-5-513. The Board however admits that it has never sent plaintiff a notice of termination. Therefore, the thirty day time limit has never become operable. *Davis v. Barr*, 646 S.W.2d 914, 918 (Tenn. 1983). Thus, this issue is also without merit.

The judgment of the trial court reinstating plaintiff as a teacher in the Washington County School System with tenure status and awarding back pay, etc., is affirmed. This case is remanded to the trial court for the entry and enforcement of the decree. Costs are adjudged against defendant.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.